| | | | |
|---|---|---|---|
| | AUSA: | Trevor M. Broad | Telephone:  (313) 226-9100 |
| AO 106 (Rev. 04/10)  Application for a Search Warrant | Special Agent: | Brady Rees | Telephone:  (313) 202-3400 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>8243 Intervale Street<br>Detroit, Michigan<br>(More fully described in Attachment A) | )<br>)<br>)<br>)<br>)<br>) |

Case No.  20-50891-2

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See ATTACHMENT A.

located in the _____Eastern_____ District of _____Michigan_____, there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- [x] evidence of a crime;
- [x] contraband, fruits of crime, or other items illegally possessed;
- [x] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2; 18 U.S.C. 922(a)(6) | Aiding and abetting making false statements while acquiring a firearm |
| 18 U.S.C. 922(n); 21 U.S.C. 841(a)(1) | Receipt of firearms while under indictment; Possession with intent to distribute |

The application is based on these facts:

See attached AFFIDAVIT.

- [x] Continued on the attached sheet.
- [ ] Delayed notice _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brady Rees, Special Agent (ATF)
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:   _____August 3, 2020_____

_____
*Judge's signature*

City and state:   _____Detroit, Michigan_____

Hon. Anthony P. Patti     U. S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brady W. Rees, being first duly sworn, hereby depose and state as follows:

<u>Introduction</u>

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the premises located at 8243 Intervale Street, Detroit, Michigan ("Target Location") as further described in Attached A, and the seizure of items described in Attachment B. The Target Location is in the Eastern District of Michigan.

2.     The statements in this Affidavit are based on my personal knowledge from my direct involvement in this investigation; communications with others who have personal knowledge of the events and circumstances described herein; information provided by other law enforcement agents; and information gained through my training and experience as well as the training and experience of other experienced law enforcement officers.

3.     The information outlined below is for the limited purpose of establishing probable cause for the requested warrant, and this affidavit does not contain all the information known to law enforcement related to this investigation.

<u>Agent Background</u>

4.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been an ATF Special Agent since January 2016, and I have had extensive law enforcement training, including at the Federal Law Enforcement Training Center in the Criminal Investigator Training Program and ATF Special Agent Basic Training. In addition, I have a bachelor's degree in Criminal Justice.

5.     As an ATF Special Agent, I have participated in numerous federal investigations as well as authored federal search warrants, federal criminal complaints, and federal arrest warrants. Prior to becoming an ATF Special Agent, I was a police officer for approximately three years in the City of Novi, Michigan.

<u>Investigation Overview</u>

6.     I am investigating Christian JOHNSON (XX/XX/2000), who resides at the Target Location, for violations of federal firearms and narcotics laws. Based on the facts set forth in this affidavit, there is probable cause to believe that JOHNSON has violated federal law, including: aiding and abetting the making of a false statement during the acquisition of a firearm, in violation of 18 U.S.C. §§ 2 and 922(a)(6); illegal receipt of a firearm while under indictment, in violation of 18 U.S.C. § 922(n); and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

7.     ATF obtained federal search warrants 2:20-mc-50891 and 2:20-mc-50891-1, authorizing the search and seizure of location data from JOHNSON's cellphone. I know that cellphone users typically keep their cellphone on their person or nearby so as to have access to it. I also know, based on my training and experience, that because cellphone users have their cellphone on their person or nearby, the cellphone's location also reveals the individual's location. Here, the location data from JOHNSON's cellphone along with remote video surveillance of the Target Location reflects that JOHNSON has been staying overnight regularly at the Target Location, including over the past several days. In addition, as further described in Attachment A, the Target Location is a single-family residence located in Detroit. Based on my training and experience, I know that multiple overnight stays at the same location, when that location is a single-family residence, is a strong indication that the location is the individual's primary residence. Accordingly, there is probable cause to believe that the Target Location is JOHNSON's primary residence, and, as detailed below, there is probable cause to believe that evidence of federal offenses will be found inside the Target Location.

## **Probable Cause**

8.     ATF agents and Detroit Police officers are investigating Treyveon BAILEY (XX/XX/1999), Christian JOHNSON (XX/XX/2000), and Kameren

TAYLOR (XX/XX/1999) for violations of federal firearm laws, and JOHNSON as well for violations of the Controlled Substances Act.

9.      I reviewed a Computerized Criminal History ("CCH") for JOHNSON, which revealed that JOHNSON has been on probation under the provisions of the Holmes Youthful Trainee Act ("HYTA") for the following offense:

> a.      November, 2019; 22nd Circuit Court: Felony Stolen Property – Receiving and Concealing – Motor Vehicle.

10.      Because JOHNSON is on probation under the provisions of HYTA, JOHNSON is prohibited from receiving firearms. TAYLOR has also been on probation under HYTA since at least February 2020 and prohibited from purchasing firearms.

Straw Purchases of Firearms

11.      Law enforcement has been investigating BAILEY for straw purchasing firearms for individuals who are prohibited from purchasing or possessing firearms. On July 24, 2020, a federal criminal complaint, 20-mj-30263, was issued, charging BAILEY with making a false statement during the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6). As further described below, there is probable cause to believe that JOHNSON aided and abetted BAILEY in making a straw purchase of firearms, and therefore aided and abetted a violation of 18 U.S.C. § 922(a)(6).

4

12.     Law enforcement became aware of a possible straw purchase of firearms from Safes and Guns Unlimited, a firearms dealer located in the Eastern District of Michigan. On July 21, 2020, BAILEY purchased the following firearms at Safes and Guns Unlimited:

    a.     One Glock, Model 17, 9mm handgun bearing serial number BFZY752;

    b.     One Ruger, Model AR-556, 5.56 caliber pistol bearing serial number 85821896.

13.     In addition, law enforcement learned that BAILEY purchased at least six additional firearms recently from Safes and Guns Unlimited prior to the purchase of the two above-listed firearms on July 21, 2020.

14.     Agents obtained and reviewed surveillance video from Safes and Guns Unlimited in connection with the purchase of the Glock Model 17 and Ruger Model AR-556 on July 21, 2020. Agents made the following observations from the surveillance video:

    a.     On July 21, 2020, a silver Chevrolet Impala arrived at Safes and Guns Unlimited. Upon arrival, TAYLOR, who was driving, and JOHNSON, who was in the rear passenger seat, exited the car and entered the store; BAILEY, however, remained inside the vehicle.

b.      While inside Safes and Guns Unlimited, JOHNSON asked to examine a Glock Model 17 pistol that was inside the glass showcase. A store employee handed JOHNSON the Glock firearm. After JOHNSON examined the Glock pistol, JOHNSON and TAYLOR inquired about a Ruger Model AR-556, 5.56 caliber pistol hanging on the wall. Below are snapshots from the surveillance video showing JOHNSON, who is wearing a grey and black North Face sweatshirt, black shorts, and black and white flip flops, and TAYLOR, who is wearing a black t-shirt and camouflage shorts.



    c.       While inside, TAYOR appeared to take a picture of the Glock pistol with his cellphone, presumably to identify for BAILEY which firearm to purchase. Below is a snapshot from the surveillance video:



    d.       After examining the Glock Model 17 and inquiring about the Ruger AR-556, JOHNSON and TAYLOR left the store and returned to the car where BAILEY was waiting. JOHNSON entered the rear passenger seat, and TAYLOR entered the driver seat of the vehicle. As noted above, JOHNSON and TAYLOR were both on probation under HYTA at the time and prohibited from purchasing firearms.

e. Then, while inside the vehicle, TAYLOR appeared to hand a quantity of U.S. currency to BAILEY.

f. Less than 10 minutes after JOHNSON and TAYLOR had returned to the car, BAILEY exited the car and went into Safes and Guns Unlimited.

g. Inside the store, BAILEY walked up to the counter, indicated he wanted to purchase the Glock, Model 17 and the Ruger, Model AR-556, and began completing the paperwork to complete the purchase.

h. BAILEY paid in cash for both firearms. I know from my training and experience as well as from conversations with other experienced ATF agents that high dollar amount purchases, such as the purchase BAILEY made on July 21, 2020, are consistent with straw purchasing, as the straw purchaser often receives cash from the actual buyer to make the purchase, rather than using a credit or debit card.

i. In purchasing the firearms, BAILEY completed an ATF Form 4473 that listed both firearms. On that ATF Form 4473, BAILEY checked "YES" next to question 11.a, which asked BAILEY if he was the actual transferee/buyer of the firearms on the form.

8

j.      BAILEY's answer to question 11.a was false because he was not in fact the actual transferee/buyer of the firearms. After completing the purchase, BAILEY returned to the vehicle where JOHNSON and TAYLOR were waiting. Upon entering the car, BAILEY appeared to hand at least one of the firearms to JOHNSON who was sitting in the backseat. Below is a snapshot from the surveillance video:



15.     Based on my training and experience, as further explained below, I believe obtaining a search warrant for the Target Residence will lead to evidence of aiding and abetting a straw purchase as well as evidence of where the firearms purchased on July 21, 2020 are located.

Instagram Posts

16.     Following the purchase of the Ruger AR-style pistol and Glock Model 17 pistol on July 21, 2020, pictures depicting a Ruger AR-style pistol and Glock, Model 17 pistol were posted to the Instagram account "23.murda." JOHNSON appears frequently in postings to that account, and as a result, based on my training and experience, I believe JOHNSON is the account user for "23.murda."

17.     On July 21, 2020—the same day the Ruger AR-style pistol and Glock Model 17 pistol were purchased—an Instagram "story" was posted to "23.murda," in which a Ruger AR-style pistol and Glock, 17, 9mm pistol were displayed on the lap of an individual, believed to be JOHNSON, in what appears to be a Chevrolet Impala with a tan interior. I believe the individual in the story is JOHNSON because the individual is wearing black shorts, black and white flip-flops, and a grey sweatshirt, all of which are consistent with the clothing JOHNSON was wearing at Safes and Guns Unlimited. Below are snapshots from the story:



18.     Later on July 21, 2020, Detroit police located the silver Chevrolet Impala that TAYLOR was driving at Safes and Guns Unlimited earlier that date with BAILEY and JOHNSON. Police found empty gun boxes for the Glock Model 17 and Ruger AR-556 that BAILEY had purchased that day underneath the vehicle. The interior of the vehicle also matched the color and layout of the interior seen in the Instagram story in which JOHNSON appeared to have the Glock Model 17 and Ruger AR-556 on his lap, as shown above.

19.     On July 22, 2020, a "story" was posted to "23.murda" in which a firearm having the same characteristics as the Ruger, AR-556 pistol purchased on July 21, 2020 can be seen. The firearms are displayed on a carpeted floor, consistent with carpeting inside a home. Below is a snapshot from the story:



20.     On July 23, 2020, a "story" was posted to "23.murda" in which a firearm having the same characteristics as the Ruger, AR-556 pistol purchased on July 21, 2020 can be seen. The firearms are displayed on a piece of furniture with shoes boxes visible in the corner, consistent with a room inside a home. Below is a snapshot from the story:



21.    On July 23, 2020, another video was posted to "23.murda" depicting a firearm having the same characteristics as the Ruger, AR-556 pistol purchased from Safes and Guns Unlimited on July 21, 2020. In the video, the number "1700" appears on the firearm, which I believe, based on my training and experience and from conversations with other ATF agents, may be an advertisement offering to sell the firearm for $1,700. The firearm is on a carpeted floor, appearing to match the carpet from the post on July 22, 2020, described above. Below is a snapshot from the video:



22.    In a video posted to "23.murda" on August 2, 2020, at approximately 12:00 a.m., the barrel of a Glock, Model 27 pistol can be seen on a table. At the approximate time this video was posted to "23.murda," location data from JOHNSON's cellphone placed him in the area of the Target Location. A snapshot of the video is below, which included the caption "My momma told me":



23.    The above-described posts on July 22, 2020 through August 2, 2020,

all involving firearms, appear to have been taken inside a house, and location data

recently obtained for JOHNSON's cellphone places him in the area of the Target

Location for the August 2 post, which shows the barrel of a Glock pistol.

Accordingly, there is probable cause to believe that the Target Location contains

firearms as well as evidence that JOHNSON unlawfully received, possessed, and

trafficked firearms.

<u>Possession with Intent to Distribution Controlled Substances</u>

24.    In a video posted on July 29, 2020 to "23.murda," a plastic bag

containing what I believe, based on my training and experience, is a large amount of

marijuana from its color and appearance, two firearms, and a large amount of what

appears to be, based on my training and experience, codeine cough syrup are

depicted. In the video, the codeine cough syrup is labeled "20 a lane!" which I believe, based on my training and experience, is advertising the syrup for sale. And, I believe, based on my training and experience, that JOHNSON is advertising the marijuana for sale with the caption "$60 3.5s." The video appears to have been taken inside a house based on the furniture seen in the video (and shown in the snapshots below) as well as the same color carpet as seen in some of the posts described above. Below are snapshots from the video:





25.    In a photograph posted to "23.murda," on August 1, 2020, at approximately 1:14 p.m., JOHNSON can be seen in the photograph wearing a black hat, light t-shirt, jeans, and white shoes, holding what appears to be codeine cough syrup. At the approximate time of this post, location data from JOHNSON's cellphone placed him in the area of the Target Location. Then, at approximately 2:51 p.m., remote video surveillance captured JOHNSON leaving the Target Location, wearing the same clothes as seen in the photograph: a black hat, light t-shirt, jeans, and white shoes. JOHNSON also appeared to have a black "fanny pack" over his shoulder as he was leaving the residence. The photograph and a snapshot of remote video surveillance are below:



26.     In a video posted to "23.murda" on August 1, 2020 at approximately 3:30 p.m., a black zip-up bag—consistent with the "fanny pack" JOHNSON was carrying as he departed the Target Location (shown above)—can be seen containing several small, colorful bags. I believe, based on my training and experience, that in the video JOHNSON is advertising narcotics for sale using the caption "$50 3.5s."



17

27.     Accordingly, there is probable cause to believe that the Target Location contains evidence of JOHNSON's possession with intent to distribute controlled substances, including where JOHNSON is obtaining, storing, and selling controlled substances, such as marijuana.

Training and Experience

28.     Based on my training and experience, individuals who possess firearms often keep them on their person, and store them at the location where they reside. I know that firearms and firearm parts are durable and non-perishable goods. Therefore, firearms and firearm parts are expected to remain in the individual's possession for extended periods and are not quickly discarded.

29.     I know, based on my training and experience, that because of his probation status under HYTA, JOHNSON is unable lawfully to purchase or receive a firearm. Accordingly, there is probable cause to believe that JOHNSON obtained the firearms depicted in the above-described Instagram posts through unlawful means, and is therefore involved in firearms trafficking.

30.     Based on my training and experience, subjects prohibited from possessing firearms, as JOHNSON is, often use individuals, such as BAILEY, who can pass background checks to purchase their firearms in violation of 18 U.S.C. § 922(a)(6) (false statement with respect to any fact material to the lawfulness of the sale or other disposition of a firearm). Evidence of such transactions is found often

in the residence of the prohibited individual, and may include receipts from the purchase, communications about transaction, and additional parts or items purchased with the firearm.

31.     Based on my training and experience, I know that firearms traffickers will utilize a passport and may be in possession of receipts or other documentation indicating the path the illegal firearms travel and information regarding scheduling or whereabouts. I know, based on my training and experience, that firearms traffickers will keep their passport and other important documents, including sensitive documents that may reveal their illegal activities, in their residence in a secure location.

32.     Based on my training and experience, I know that firearm traffickers often utilize techniques to prevent the detection of firearms that are shipped unlawfully by means of falsifying invoices, bills of sale, shipping papers, and customs forms. They also list the firearms as other items, which include, but are not limited to, firearms parts and pieces (rather than firearms) and components utilized in the automotive, industrial, and machinery industries. In addition, illegal firearm traffickers have been known to conceal firearms inside of other objects to avoid detection by law enforcement officials.

33.     I know based upon training and experience that one key indicator of illegal firearm and ammunition trafficking activity is the use of complex methods

for ordering, paying for, and transferring the firearms, firearm components, and/or ammunition. I know that illegal firearm traffickers use payment methods that are often difficult to trace, which include using United States currency, money orders, wire-transfers, PayPal accounts and/or pre-paid credit cards held by different subjects. Illegal firearm traffickers use these methods in order to minimize the ability for law enforcement officials to identify the original source of funds by means of compartmentalization.

34. I know from training, experience, and conversations with veteran law enforcement officers that financial documents and records establish legitimate income and net worth, and this proves that assets in excess of legitimate sources are from another source, such as illegal trafficking of firearms. Indeed, courts have recognized that "unexplained wealth" is probative evidence of contraband trafficking. These items are kept in secure locations within the residences, offices, garages, automobiles, storage lockers, and/or safe deposit boxes, for ready access and to conceal such items from law enforcement authorities.

35. I know based upon training and experience that firearms traffickers often possess other items commonly used or acquired in connection with the sale of firearms and possess those items within their homes, automobiles, and numerous other places which they have access to and control over, so that they are easily accessible, and to hamper the activities of law enforcement. Some of these items

include, but are not limited to, other firearms (*i.e.*, merchandise), firearm parts, ammunition, firearm receipts, firearm brochures or owner's manuals, records of sales or acquisition of firearms, firearms magazines, and holsters.

<u>Use of Cellular Phones for Drug Trafficking and Firearms Trafficking</u>

36.     Based on my training and experience, and the investigations of other law enforcement officers with whom I have had discussions, those who are engaged in firearms trafficking and/drug trafficking, often use multiple cellular telephones to facilitate their trafficking activities. Firearms traffickers and drug traffickers commonly use cellular telephones to communicate with co-conspirators, as well as to store names, numbers, and contact information of other subjects involved with their criminal activities, including customers, suppliers and couriers. Accordingly, cellular phones serve both as an instrumentality for committing the crime and a storage device for evidence of the crime.

37.     Cellular telephones are likely to contain evidence related to recently called firearms contacts  and/or drug contacts, or messages/calls received from the contacts, the names and telephone numbers of firearms or drug contacts, messages to/from firearms or drug traffickers, photographs of or activity with firearms and/or drugs, and photographs of those involved in the crimes. In this respect, cellular telephones are tools of both drug and firearms trafficking.

38. Cellular telephones contain a "call log," which records the telephone number, date, and time of calls made to and from the phone.

39. Cellular telephones have increased capabilities to include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

40. Based on my training and experience, and the investigations of other law enforcement officers with whom I have had discussions, I know that individuals involved in drug trafficking or illegal firearms trade often post information regarding the sales of illegal narcotics or illegally possessed firearms through social media, such as Facebook and Instagram, including using private messages to facilitate sales and posts advertising their merchandise. From speaking with other law enforcement officers of their investigations involving cellular telephones and narcotics trafficking and/or firearms trafficking, it is common for prohibited persons to post photographs and/or videos of narcotics and/or firearms. Indeed, JOHNSON appears to use social media regularly to post photos and videos of firearms and narcotics.

41.     Therefore, I am requesting that the search warrant for the Target Location authorize the seizure of all cellphones associated with JOHNSON located at the Target Location.

42.     Based on my training and experience, as well as from information found in publicly available materials including those published by Apple and other cellular phone manufactures, that some cellular phones such as iPhones offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") in lieu of a numeric or alphanumeric passcode or password. This feature is called Touch ID.

43.     If a user enables Touch ID on a given Apple device, he or she can register up to five fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) found at the bottom center of the front of the device. In my training and experience, users of Apple and other devices that offer Touch ID often enable it because it is considered a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

44.     In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made.

45.     The passcode or password that would unlock the cellular phone(s) seized at the Target Location is/are not known to law enforcement. Thus, it will likely be necessary to press the finger(s) of the user of the cellular phone(s) found during the search of the Target Location to the device's Touch ID sensor in an attempt to unlock the device for the purpose of deactivating the Touch ID and/or other security features to allow any future search authorized by a search warrant. Attempting to unlock the relevant device(s) via Touch ID with the use of the fingerprints of the user is necessary because the government may not otherwise be able to access the data contained on those devices for executing any future search warrants authorized by a court of competent jurisdiction.

46.     Based on my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, based on my training and experience, that person may not be the only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, based on my training and experience, in some cases, it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any occupant of the Target Location to press their finger(s) against the Touch ID sensor of the locked Apple device(s) found during the search of the Target Locations in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID.

47.     Although I will not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience, it is common for a user to unlock a Touch ID-enabled device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the cellular phone(s) seized at the Target Location as described above within the five

attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

48.     Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of individuals found at the Target Location to the Touch ID sensor of the applicable cellular phone(s) found at the Target Location for the purpose of attempting to unlock the device via Touch ID in order to allow the search of the contents as authorized by any future search warrants. This search warrant only authorizes law enforcement to (1) unlock the phone; and (2) disable all security settings to enable a search of the device, subsequent to a search warrant, in the future.

## Manner of Execution

49.     *Sealing of Documents*.  I request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

## Conclusion

50.     There is probable cause to believe that evidence, contraband, fruits and instrumentalities of federal criminal offenses, including: aiding and abetting the

making of a false statement during the acquisition of a firearm, in violation of 18 U.S.C. §§ 2 and 922(a)(6); illegal receipt of a firearm while under indictment, in violation of 18 U.S.C. § 922(n); and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), will be found at the Target Location.

51.    In consideration of the foregoing, I respectfully request that this Court issue a search warrant for the Target Location more fully described in Attachment A for the items listed in Attachment B.

Respectfully submitted,

_____

Brady Rees, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means

_____

Hon. Anthony P. Patti
United States Magistrate Judge

Dated:    August 3, 2020

<u>ATTACHMENT A</u>
Description of Location To Be Searched

Target Location:  **8243 Intervale Street, Detroit, Michigan**, which is in Eastern
District of Michigan. Further described as a single-family residence with red brick
and dark roof. It is further described as the corner residence located at southeast
corner of Intervale Street and Cloverlawn Street, with the numbers "8243" visible
and attached the right of the front entrance. The Target Location to be searched
includes any appurtances to the real property that is the Target Location and any
vehicles on the property or curtilage at the time of the search.



ATTACHMENT B
Items To Be Seized

The Government is authorized to seize all information that constitutes fruits, evidence, or instrumentalities of violations of  18 U.S.C. §§ 2 and 922(a)(6); illegal receipt of a firearm while under indictment, in violation of 18 U.S.C. § 922(n); and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1),18 U.S.C. § 922(n) (obtaining a firearm while under indictment), involving Christian JOHNSON, including but not limited to, information pertaining to the following matters:

1.  Items of clothing that JOHNSON is seen wearing in social media that contain firearms, including: shoes, pants, sweatshirts, and t-shirts;

2.  Any firearms and ammunition;

3.  Any photographs of any weapons, firearm, or ammunition;

4.  Any controlled substances, including but limited to marijuana, controlled substance paraphernalia, or evidence associated with the unlawful distribution of any controlled substance;

5.  All evidence of firearms trafficking including any sale, transportation, possession or distribution of a firearm, including but not limited to records, papers, ledgers, tally sheets, stored electronic communication devices, mobile telephones, telephone numbers of customers, suppliers, or couriers and the stored electronic information containing within, other papers;

6.  Any digital media including but not limited to cell phones, digital cameras, computers, compact discs and flash drives that could contain photographs and contents therein;

7.  Items of identification and papers, documents and affects which establish dominion and control of the premises, including, but not limited to, driver's

license, keys, mail, envelopes, receipts for rent, bills from public utilities, photos, address books and similar items; and

8.   Items of identification and papers, documents and affects which establish dominion and control of 8243 Intervale Street, Detroit, Michigan, including, but not limited to, driver's license, keys, mail, envelopes, receipts for rent, bills from public utilities, photos, address books and similar items.

AUSA:    Trevor M. Broad                Telephone:  (313) 226-9100

AO 93  (Rev. 11/13) Search and Seizure Warrant        Special Agent:    Brady Rees        Telephone:  (313) 202-3400

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Michigan

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.  20-50891-2 |
| 8243 Intervale Street | ) |
| Detroit, Michigan | ) |
| (More fully described in Attachment A) | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

    An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

    I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

    **YOU ARE COMMANDED** to execute this warrant on or before    August 17, 2020 _____    *(not to exceed 14 days)*

    ☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

    Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

    The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
*(United States Magistrate Judge)*

    ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

    ☐ for ____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    August 3, 2020   8:57 pm _____

_____
*Judge's signature*

City and state:    Detroit, Michigan _____    Hon. Anthony P. Patti    U. S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>20-50891-2 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*